IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MOHAMMED L.,[1]<br><br>        Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,[2]<br><br>        Defendant. | Case No. 1:20-cv-00007-RRB<br><br>**ORDER REMANDING FOR**<br>**PAYMENT OF BENEFITS**<br>**(Docket 22)** |

## I. INTRODUCTION

Claimant, Mohammed L., filed an application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI") on March 21, 2018, alleging disability beginning April 5, 2016.[3] Claimant has exhausted his administrative remedies and seeks relief from this Court.[4] He argues that the determination by the Social Security Administration ("SSA") that he is not disabled, within the meaning

---

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, was substituted for Andrew M. Saul (Commissioner, Soc. Sec. Admin., in official capacity) pursuant to Fed. R. Civ. P. 25(d).

[3] Tr. 15.

[4] Dockets 1, 15.

of the Social Security Act ("the Act"),[5] is not supported by substantial evidence, and that the Administrative Law Judge ("ALJ") committed legal errors. Claimant seeks a reversal of the decision by the SSA and a remand for payment of benefits, or, in the alternative, remand for a new hearing.[6] The Acting Commissioner of Social Security ("Commissioner") filed an answering brief in opposition, and Claimant has replied.[7]

For the reasons set forth below, Claimant's Motion for Remand at **Docket 22** is **GRANTED,** the Commissioner's final decision is **VACATED,** and the case is **REMANDED** to the SSA for payment of benefits.

## II. BACKGROUND

Claimant alleges that he is disabled following a workplace injury on April 5, 2016.[8] Claimant had performed the same job as a fish processor since July 2001,[9] and was 57 years old on the date of his injury. His date last insured for purposes of Title II was December 31, 2021.

### A. Medical Records

Claimant saw three separate emergency room doctors in the days following his April 2016 injury.[10] His initial physical therapy examination took place two weeks after his injury.[11] He attended the four sessions prescribed and was discharged in June,

---

[5] The Act provides for the payment of disability benefits to individuals who suffer from a physical or mental disability. 42 U.S.C. § 423; 42 U.S.C. § 1381.
[6] Docket 22 at 24–25.
[7] Docket Nos. 24, 29.
[8] *See* Emergency Room report at Tr. 449.
[9] Tr. 630.
[10] Dr. Roger Golub, Dr. Kimberly Bakkes, and Dr. Charles Roesel were the emergency room physicians who saw Claimant in the first month after his injury. Tr. 450–52.
[11] Tr. 502.

*Mohammed L. v. Saul*     Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits     Page 2
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 2 of 20

having improved.[12] He returned in December 2016 for fitting of an abdominal brace due to chronic low back pain.[13]

A February 9, 2017, workers' compensation Independent Medical Examination ("IME"), performed by **Dr. Mitchell Weinstein**, found that Claimant's debilitating condition was related to his work injury.[14] Claimant underwent surgery on April 13, 2017, but felt the surgery did not help his symptoms.[15] However, a second IME performed by Dr. Weinstein on January 16, 2018, opined that although the need for surgery was the result of a work-related accident, "the substantial cause of his disability is his pre-existing moderately severe lumbar spondylosis."[16] Accordingly, workers' compensation benefits were terminated.[17] Nevertheless, **Dr. Weinstein did not believe that Claimant's condition would be resolved.[18] He recommended referral to a pain management specialist, and noted that it was "unlikely" that Claimant would return to any kind of physical labor due to chronic pain.**[19]

Having lost his workers' compensation benefits, Claimant next filed for SSDI and SSI. Upon filing for Social Security benefits, Claimant's medical records were reviewed by **Dr. Jeffrey Merrill** on June 27, 2018.[20] Dr. Merrill concluded that claimant could lift and/or carry 50 pounds occasionally, 25 pounds frequently, and could stand and

---

[12] Tr. 497.
[13] Tr. 493–96.
[14] Tr. 622.
[15] *Id.*
[16] Tr. 627.
[17] Tr. 223.
[18] Tr. 627.
[19] Tr. 628–29.
[20] Tr. 74–99.

*Mohammed L. v. Saul*      Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits      Page 3
Case 1:20-cv-00007-RRB    Document 32    Filed 03/01/22    Page 3 of 20

walk for 6 hours per day, and sit 6 hours per day, and therefore was **capable of medium, unskilled work.**[21]

However, ongoing records from treating physicians, including **Dr. Robert Hunter** and **Dr. Justin Stahl**, reflect continuing pain, weakness, and numbness, in addition to episodes of incontinence.[22] Claimant was referred for electrodiagnostic evaluation due to "numbness in the bilateral lower extremities and left upper extremity."[23] Although there was "no electrodiagnostic evidence of peripheral neuropathy,"[24] the assessment reflected an "abnormal study," noting "electrodiagnostic evidence of a moderately severe bilateral carpal tunnel syndrome," as well as evidence of probable "chronic left ulnar neuropathy without evidence of current compression."[25] Treating physician **Dr. Hunter predicted that Claimant would have a permanent impairment.**[26]

In September 2018, he again was referred to **physical therapy** due to "decrease in function," including neck and low back pain, weakness, radiculopathy, dizziness, imbalance. However, he did not return after the first visit. He returned in December 2018, and attended four additional visits before the record ends. Decreased motivation for participation was noted. It is unclear if Claimant returned after January 2019.[27]

---

[21] Tr. 84.
[22] As summarized by Dr. Weinstein. Tr. 623–24.
[23] Tr. 313.
[24] Tr. 624.
[25] Tr. 313.
[26] Tr. 630.
[27] Tr. 469–89.

*Mohammed L. v. Saul* Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits Page 4
Case 1:20-cv-00007-RRB Document 32 Filed 03/01/22 Page 4 of 20

Meanwhile, his treating physicians, primarily **Dr. Hunter**, continued to note bilateral knee, neck, and back pain, and numbness in his left arm, leg, and foot, as recently as one month prior to the ALJ hearing.[28] At that time, he was using a cane in his right hand, and Dr. Hunter noted "the right leg is larger than the left leg from a standpoint of muscular bulk with the greatest discrepancy being in the calves," and Claimant was unable to perform squat, stand on his toes, or stand and lift his toes due to pain in his right knee, left hip, and back.[29] He was referred for neurosurgical follow-up reports, which are not in the record.[30]

With respect to memory loss, entries by treating physician, Dr. Hunter hypothesized a relationship between Vitamin B12 deficiency and memory loss.[31] Claimant commenced regular vitamin B12 injections on January 8, 2018,[32] but there is no record of if or when those shots were discontinued, or whether they were helpful with Claimant's memory loss. Dr. Hunter frequently noted Claimant's concerns about memory loss,[33] and he also noted a language barrier between himself and his patient.[34] His records otherwise focus almost exclusively on various pain complaints, and he did not order any additional testing with respect to Claimant's memory.

---

[28] Tr. 525.
[29] Tr. 525–26.
[30] Tr. 526.
[31] Tr. 605.
[32] Tr. 599.
[33] Tr. 368, 525, 571–72, 585, 591, 604.
[34] Tr. 563.

*Mohammed L. v. Saul*     Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits     Page 5
Case 1:20-cv-00007-RRB    Document 32    Filed 03/01/22    Page 5 of 20

All of the foregoing records were reviewed by impartial non-examining medical expert **Dr. Steven Andersen**. Dr. Andersen opined that Claimant was capable of no more than **light work**.[35]

B. ALJ Decision

The ALJ hearing was held on August 12, 2019,[36] where the ALJ took brief testimony from Claimant, as well as non-examining medical expert Dr. Andersen, non-examining psychologist Collette Valette, PhD, and vocational expert Daniel Labrosse. An Urdu interpreter was present telephonically. However, the transcript reflects the inherent shortcomings associated with a telephonic interpreter interpreting telephonic witnesses, including difficulty hearing and understanding those witnesses.

The Commissioner has established a five-step process for determining disability.[37] A claimant bears the burden of proof at steps one through four in order to make a *prima facie* showing of disability.[38] Applying the 5-step process, the ALJ's decision concluded that: **Step 1**, Claimant had not engaged in substantial gainful activity since his alleged onset date; **Step 2**, Claimant suffered from severe impairments, including disorders of the cervical and lumbar spine, mild obesity, carpal tunnel syndrome, and mild degenerative changes of the bilateral hands; and **Step 3**, Claimant's severe impairments did not meet any medical listings.[39]

---

[35] Tr. 49.
[36] Tr. 32.
[37] 20 C.F.R. § 404.1520(a)(4).
[38] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[39] Tr. 17–18.

*Mohammed L. v. Saul* Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits Page 6
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 6 of 20

Before proceeding to Step 4, a claimant's residual functional capacity ("RFC") is assessed. RFC is the most someone can do despite their mental and physical limitations.[40] This RFC assessment is used at Steps Four and Five.[41] Residual functional capacity is described in terms of "heavy," "medium," "light," or "sedentary" work. In evaluating his RFC, the ALJ concluded that Claimant had the capacity to perform **medium work**, with some additional limitations related to climbing and exposure to unprotected heights and machinery.[42]

At **Step 4**, the ALJ found that Claimant could not perform his past relevant work as a Fish Cleaner/Processor and Fish House Worker.[43] Claimant having made a *prima facie* case, the burden of proof shifted to the Commissioner at **Step 5**.[44] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2," commonly referred to as "the Grids."[45] With the assistance of a vocational expert ("VE"), **the ALJ concluded that Claimant was able to perform medium work** in the national economy, such as Industrial Cleaner, Laundry Worker, and Laborer, Stores.[46] Accordingly, the ALJ concluded that Claimant was not disabled.

---

[40] *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[41] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[42] Tr. 19. As discussed below, the ALJ did not take any testimony from Claimant regarding his limitations, despite attempts by his attorney to enter such testimony into the record.
[43] Tr. 25.
[44] *Treichler*, 775 F.3d at 1096 n.1.
[45] *Tackett*, 180 F.3d. at 1099.
[46] Tr. 26.

*Mohammed L. v. Saul* Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits Page 7
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 7 of 20

## III. DISCUSSION

A decision of the Commissioner to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error. In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[47] Claimant argues that the ALJ's decision is not supported by substantial evidence and that the ALJ committed legal errors. Specifically, he contends that the ALJ erred at Step 2 when she failed to find Claimant's memory impairment to be medically determinable, which then impacted the ultimate determination by failing to include his memory issues into the RFC.[48] Additionally, Claimant complains that the RFC failed to take his peripheral neuropathy into consideration.[49] Finally, Claimant alleges that because he is incapable of medium work, he qualifies for disability under the Medical-Vocational Guidelines.[50]

### A. Medically Determinable Impairments

If an ALJ commits legal error, courts will uphold the decision if it is harmless.[51] An error is harmless if it is "inconsequential to the ultimate nondisability determination."[52] Failure to deem an impairment "severe" at Step 2, if error, is a harmless error when a claimant otherwise prevails at Step 2 and the case proceeds through the remaining steps. "Step two is merely a threshold determination meant to screen out weak

---

[47] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).
[48] Docket 22 at 13.
[49] *Id.* at 19.
[50] *Id.* at 20.
[51] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).
[52] *Id.* (citation omitted).

*Mohammed L. v. Saul*     Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits     Page 8
Case 1:20-cv-00007-RRB    Document 32    Filed 03/01/22    Page 8 of 20

claims. It is not meant to identify the impairments that should be taken into account when determining the RFC."[53] However, when assessing the RFC, "the adjudicator must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'"[54] "[I]f an ALJ does not consider all **medically determinable impairments** when assessing a claimant's RFC, then an error at step two is not harmless."[55]

The ALJ's failure to find Claimant's mental and neurological health condition(s) severe at Step 2 was not error standing alone, but failure to include any medically determinable health issues in the RFC was error. "Medically determinable" is defined as an impairment that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."[56] Symptoms or a medical opinion are not adequate to establish an impairment; rather, the regulation requires "objective medical evidence from an acceptable medical source."[57] "Objective medical evidence" means "signs, laboratory findings, or both."[58]

1. **Memory issues**

Claimant argues the ALJ failed to find his memory impairment was severe or even medically determinable.[59] But Claimant alleges that medical evidence amply

---

[53] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)).
[54] *Id.* (citations omitted) (emphasis added).
[55] *Young v. Saul*, No. 19-CV-01965-PJH, 2020 WL 3506805, at *14 (N.D. Cal. June 29, 2020)(internal citations and quotations omitted)(emphasis added).
[56] 20 CFR § 416.921
[57] *Id*.
[58] 20 CFR § 416.902.
[59] Docket 22 at 13.
*Mohammed L. v. Saul*     Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits     Page 9
Case 1:20-cv-00007-RRB Document 32 Filed 03/01/22 Page 9 of 20

documents that he was diagnosed "as early as his alleged onset date with mental impairments manifesting as impaired memory."[60] Specifically, Claimant points to the medical records of his treating physician, Dr. Hunter, to whom he reported forgetfulness, and problems with writing, spelling, and remembering names, in addition to losing items and his train of thought more often.[61] In concluding that Claimant's memory impairment was not medically determinable, the ALJ found that the medical record contained no workup with regards to memory loss.[62]

The Court concludes that Claimant's memory issues were not "medically determinable," under the above definition, as Dr. Hunter never diagnosed memory issues, nor was any testing performed to confirm such issues. Repeated self-reporting of subjective memory problems, without more, is not enough to deem it "medically determinable."

### 2. Peripheral neuropathy

Claimant next argues that the ALJ improperly failed to find his peripheral neuropathy to be medically determinable.[63] Unlike Claimant's subjective memory issues, Dr. Hunter included numbness in his assessment at almost every visit as: "Peripheral neuropathy with upper and lower ext[tremity] paresthesias."[64] But the ALJ found

---

[60] Docket 22 at 15–17.
[61] Tr. 604.
[62] Tr. 55.
[63] Docket 22 at 19-20.
[64] *See* Tr. 378, 388, 389, 394, 395, 397, 398, 399, 400, 604, 605.

*Mohammed L. v. Saul*                                                                                                        Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits                                                           Page 10
Case 1:20-cv-00007-RRB     Document 32     Filed 03/01/22     Page 10 of 20

Dr. Hunter's opinion "not persuasive," and did not acknowledge the physician's multiple references to peripheral neuropathy.[65]

"The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'"[66] Specifically, the ALJ has a duty to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."[67] Dr. Hunter's repeated assessments over several years suggest that he verified the numbness during examination, and the nature of Claimant's work injury supports the veracity of such symptoms. Any doubts the ALJ may have had about Dr. Hunter's repeated diagnoses of peripheral neuropathy could have been resolved by the ALJ through interrogatories to Dr. Hunter. Instead, the ALJ found Dr. Hunter's entire opinion "not persuasive." Failure to include numbness in Claimant's RFC was error.

**B. Testimony and Opinions Regarding Residual Functional Capacity**

**1. Treating physicians**

Claimant's treating physicians wrote more than 30 separate notes excusing Claimant from work for more than two and a half years after his injury,[68] and no treating physician ever released Claimant to work. Claimant's primary treating physician, Dr. Hunter, continued to treat Claimant for chronic pain as recently as one month prior to

---

[65] Docket 22 at 19 (citing Tr. 24).
[66] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (*citing* Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).
[67] *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).
[68] Tr. 423–47. In addition to Dr. Hunter, the record contains temporary work restrictions from other providers, including the emergency room physicians Dr. Roger Golub, Dr. Kimberly Bakkes, and Dr. Charles Roesel. Tr. 450–52.

*Mohammed L. v. Saul*     Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits     Page 11
Case 1:20-cv-00007-RRB    Document 32    Filed 03/01/22    Page 11 of 20

the ALJ hearing,[69] and predicted that Claimant would have a permanent partial impairment.[70] A month before the hearing, Dr. Hunter noted a discrepancy in the muscle mass of Claimant's legs, and that Claimant was now using a cane.[71] He was referred for neurosurgical follow-up reports, and again issued a work excuse for four months.[72] Notably, Dr. Hunter makes no reference to malingering.

But the ALJ dismissed Claimant's treating physicians' opinions wholesale. She dismissed the opinions of three emergency room doctors who excused Claimant from work, because "they indicated brief, limited periods of limitation and did not provide functional limitations for a continuous 12-month period. These providers also did not support their work restrictions with explanation or reference to objective medical findings."[73] But no emergency room doctor could have provided functional limitations for a 12-month period, as they all saw Claimant within days of his work accident.

The ALJ deemed Dr. Hunter's opinions unpersuasive as "not consistent with the overall medical record."[74] She suggests that Dr. Hunter's notes "provided little support for his opinions, particularly objective medical evidence," and that his opinion regarding disability amounted to an opinion on the ultimate issue of disability, which is reserved for the Commissioner. She deemed his opinion that Claimant is unable to perform any work on a sustained basis as "non-specific (as he did not provide an opinion about the claimant's

---

[69] Tr. 525.
[70] Tr. 630.
[71] Tr. 525–26.
[72] Tr. 526.
[73] Tr. 25.
[74] Tr. 24.

*Mohammed L. v. Saul* \hfill Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits \hfill Page 12
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 12 of 20

function-by-function abilities) and not persuasive."[75] But it was the ALJ's duty to fully and fairly develop the record, especially "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."[76] The ALJ had a responsibility to request a function-by-function report from Claimant's primary treating physician, if she felt one was critical to understanding the doctor's opinion.

  2.  **Independent medical exams**

The ALJ then gave only cursory acknowledgment to **Dr. Weinstein**, who examined Claimant on two occasions. The ALJ found Dr. Weinstein's second workers' compensation IME opinion "not persuasive" and "internally inconsistent," because Dr. Weinstein indicated that although no physical restrictions were identified relevant to the date of his work injury, it was unlikely Claimant would return to any kind of physical labor because of his chronic pain.[77]

The Court finds that these two statements by Dr. Weinstein are not inconsistent in the context of workers' compensation, where an independent medical examiner must discern between *work injuries* and *unrelated debilitating conditions*. After determining that Claimant's condition no longer was work related, Dr. Weinstein volunteered his opinion that he nevertheless did not believe that Claimant's condition would be resolved, recommended referral to a pain management specialist, and noted that it was "unlikely" that Claimant would return to any kind of physical labor due to chronic

---

[75] *Id.*
[76] *Mayes*, 276 F.3d at 459–60.
[77] Tr. 24.

pain.[78] There is no inconsistency in Dr. Weinstein's opinion, given that it was issued in the workers' compensation context.

### 3. Non-examining medical experts

Two non-examining medical experts, both retained by the Agency to give impartial opinions, reviewed Claimant's file. In June 2018, State agency medical consultant **Dr. Merrill** reviewed the medical records through May 2018, and opined that Claimant could occasionally lift **50 pounds**, and therefore could perform **medium** work.[79] But **Dr. Andersen** later testified at the August 2019 ALJ hearing, having reviewed additional medical records available up to that date.[80] He opined that Claimant did not meet a listed impairment (Step 3), but that his physical limitations included occasional lift/carry of **25 pounds**, and 10 pounds frequently,[81] which is the equivalent of **light work**, rather than medium. Dr. Andersen's opinion was based on the nerve damage and carpal tunnel, with "no weakness or neuropathy in his lower extremities."[82] In other words, Dr. Andersen did not take any numbness in Claimant's legs into consideration when rendering his opinion.

In reaching her conclusions, the ALJ relied significantly on the written opinion of **Dr. Merrill,** who opined in June 2018 that Claimant could perform **medium work**.[83] Dr. Andersen' 2019 testimony took the most recent medical evidence into

---

[78] Tr. 627–29.
[79] Tr. 74–83.
[80] Tr. 32, 46–48.
[81] Tr. 49.
[82] Tr. 52.
[83] Tr. 22–25.

*Mohammed L. v. Saul*     Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits     Page 14
Case 1:20-cv-00007-RRB    Document 32    Filed 03/01/22    Page 14 of 20

consideration,[84] but the ALJ found Dr. Andersen's 2019 testimony that Claimant was capable of no more than **light work** was only "somewhat persuasive."[85]  Instead, the ALJ found Dr. Merrill's 2018 opinion more consistent with "the record as a whole," rationalizing that Dr. Merrill took into consideration the skepticism of some of Claimant's treating physicians regarding his reported symptoms.[86]  But the Court notes that the skepticism Dr. Merrill noted in the earlier medical records is not found in the later records.  And it flies in the face of reason that the physician who did not review the most recent medical records could render a decision more consistent with the record as a whole.

### 4. Claimant's testimony

Finally, the transcript of the ALJ hearing reflects that the only testimony Claimant offered, via interpreter, was a very brief description of his past relevant work.[87]  In determining a claimant's RFC, the ALJ must base findings on "all of the relevant medical and other evidence," **including a claimant's testimony regarding the limitations imposed by his impairments.**[88]  But Claimant was not asked about his ability to lift or carry, or any other limitations or symptoms, such that the ALJ could evaluate his credibility herself.  Rather, the ALJ affirmatively denied Claimant the opportunity to testify as to whether he could perform certain activities, and declined to allow the Urdu interpreter to interpret the VE testimony for Claimant.[89]

---

[84] Tr. 23.
[85] *Id.*
[86] *Id.*
[87] Tr. 56–60.
[88] 20 C.F.R. §§ 404.1545(a)(3), 404.1529(c)(3) & (4).
[89] Tr. 65.

*Mohammed L. v. Saul*  Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits  Page 15
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 15 of 20

## C. Reconciling Physician Opinions

An ALJ is no longer required to "weigh" medical opinions. The Commissioner correctly notes that the most important factors to consider under the current guidelines when evaluating medical opinions are "supportability and consistency."[90] But the Commissioner fails to acknowledge the other factors listed in the regulations, including "relationship with the claimant," which considers the length, purpose, and extent of that treatment relationship, as well as the frequency of examinations, noting that "a medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."[91]

In this case, every examining physician—both treating and independent—deemed Claimant significantly debilitated and unable to perform any physical labor. The only physicians who thought Claimant could perform any work at all were the two physicians who never examined him. Both Dr. Merrill and Dr. Andersen concluded, on the basis of written records alone, that Claimant could perform work somewhere from light to medium exertion. The ALJ found Dr. Merrill's opinion more persuasive.

The Commissioner argues that this Court should not second-guess the ALJ's decision to rely on Dr. Merrill, suggesting that Claimant is asking for "an alternative interpretation of the opinion evidence."[92] But the standard is whether the ALJ's decision is "supported by substantial evidence and free of legal error."[93] To that end, the Court

---

[90] Docket 24 at 9 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).
[91] 20 C.F.R. §§ 404.1520c(c)(1)-(4). Additionally, a specialist's opinion may be more persuasive about medical issues related to his or her specialty.
[92] Docket 24 at 9.
[93] Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

Mohammed L. v. Saul  Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits  Page 16
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 16 of 20

considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[94] "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[95]

When the ALJ dismissed the opinions of every examining physician, as well as the more restrictive opinion of Dr. Andersen, she eliminated every opinion that could lead to a finding of disability. Dr. Merrill, who neither examined Claimant nor reviewed the most recent medical records, offered the *only* medical opinion that would yield a "not disabled" conclusion according to the Grids. This fact, considered in conjunction with the ALJ's generally unsupported rejection of other physician opinions, failure to develop the record, refusal to allow the interpreter to translate the VE testimony, and failure to accept proffered testimony from Claimant himself, invites some skepticism of the ALJ's analysis.[96]

If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[97] This rule assumes, however, that the ALJ's conclusion is one of those possible rational interpretations. The Court finds that Dr. Merrill's lone opinion that Claimant could perform medium work is the clear outlier among all the physicians' opinions, and the fact that this opinion is based upon incomplete medical

---

[94] *Id.*
[95] Perales, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).
[96] Counsel attempted to question Claimant regarding his abilities, so that the VE could testify as to light duty jobs that fit that description, but the ALJ indicated "at this point the GRID rules would apply," and suggested that it was "a very strong possibility" that Claimant would be "gridded out." Tr. 71. No testimony regarding his symptoms or abilities was ever taken from Claimant.
[97] *Gallant v. Heckler*, 753 F.2d 1450, 1452–53 (9th Cir. 1984).

*Mohammed L. v. Saul*  Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits  Page 17
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 17 of 20

records renders reliance on the opinion flawed. Therefore, the Court concludes that the ALJ's reliance on Dr. Merrill's opinion is not "substantial evidence," when the record contains the opinions of numerous other physicians, most of whom performed examinations, and many of those with long-term treating relationships with Claimant, who consistently concluded that Claimant was impaired to a more significant degree. Here, once the ALJ's errors are accounted for, the record supports a finding that Claimant is capable of, at most, light work.

### D. Medical-Vocational Guidelines ("The Grids")

Disability is defined in the Act as:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[98]

Moreover, an individual shall be determined to be under a disability only if his or her impairments are of such severity that they not only are unable to do their previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.[99]

The Grids present—in table form—a shorthand method for determining the availability and number of suitable jobs for a claimant, by categorizing jobs by physical-exertional levels, and a claimant's placement in the appropriate table depends

---

[98] 42 U.S.C. § 423(d)(1)(A). Claimant already had satisfied the 12-month requirement by the time he underwent surgery on April 13, 2017. Tr. 622. Even the workers' compensation medical examiner, Dr. Weinstein, did not believe that Claimant's condition was resolved as of January 16, 2018, well past the 12-month requirement. Tr. 627.

[99] 42 U.S.C. § 423(d)(2)(A).

*Mohammed L. v. Saul* Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits Page 18
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 18 of 20

upon four factors—age, education, previous work experience, and physical ability. [100] For each combination of these factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in the appropriate exertional category.

The distinction between light and medium work is critical in this case, as Claimant's age triggers a different result under each category.[101] Claimant, age 57 on the date of his injury, was an individual of "advanced age" under the Regulations. Under § 202, an individual of advanced age with Claimant's limited education and lack of transferable skills, who is capable of no more than "light work," is deemed "Disabled," whereas under § 203, the same individual, capable of "medium work," is deemed "Not Disabled." There is no category between "light" and "medium."

**E.     Remedy**

With respect to whether this Court should remand for further administrative proceedings or remand for benefits, the Court notes that remand typically is required with instructions to the ALJ to reevaluate Claimant's RFC, and to obtain additional VE testimony regarding work available under that revision. But the Court has concluded that the ALJ's finding that Claimant is capable of medium work is unsupported by substantial evidence, for the reasons explained above. Under 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202, an individual of advanced age with Claimant's limited education and lack of transferable skills, who is capable of "light work" or less, is deemed "Disabled." If the Grids direct a finding of disabled, other evidence, including testimony from a VE, cannot

---

[100] *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir.2006); *Tackett*, 180 F.3d at 1101.
[101] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

*Mohammed L. v. Saul*　　　　　　　　　　　　　　　　　　　　　　　　Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits　　　　　　　　　　　　　　　　　　　　　　　　Page 19
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 19 of 20

be used to change that outcome.[102]  The Grids provide bright-line rules intended to streamline decisions such as these.  Accordingly, further proceedings are not required.

## IV.  CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion at **Docket 22** is **GRANTED** and this matter is **REMANDED** for payment of benefits.

IT IS SO ORDERED this 1st day of March, 2022, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

---

[102] *Cooper v. Sullivan*, 880 F.2d 1152, 1156–57 (9th Cir. 1989); *Lounsburry*, 468 F.3d at 1115–16.

*Mohammed L. v. Saul*  Case No. 1:20-cv-00007-RRB
Order Remanding for Payment of Benefits  Page 20
Case 1:20-cv-00007-RRB   Document 32   Filed 03/01/22   Page 20 of 20